In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-1306

SAMUEL WEGBREIT and ELIZABETH J. WEGBREIT,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court.
No. 7109-13 — **Mary Ann Cohen**, *Judge*.

ARGUED DECEMBER 7, 2020 — DECIDED DECEMBER 29, 2021

Before SYKES, *Chief Judge*, and BRENNAN and ST. EVE, *Circuit Judges*.

SYKES, *Chief Judge*. Samuel and Elizabeth Wegbreit sheltered several million dollars of income in a life-insurance policy held by a sham trust. The IRS caught on to the Wegbreits' scheme and issued a deficiency notice showing that they owed millions in back taxes. The Wegbreits challenged the notice in the tax court. After discovery revealed a series of suspicious documents and transactions relating to the Wegbreits' finances, the IRS added civil fraud

allegations. The tax court agreed with the IRS, finding that the Wegbreits underreported their income by nearly $15 million and engaged in a pattern of conduct intended to defraud the government.

We affirm. The Wegbreits' rambling brief spans 78 pages yet somehow develops only two coherent arguments remotely related to the tax court's decision. And those two arguments are baseless: the Wegbreits stipulated them away in the tax court. We therefore order John E. Rogers, the Wegbreits' attorney, to show cause why he should not be sanctioned under Rule 38 for filing this frivolous appeal.

## I. Background

Samuel Wegbreit founded and served as an executive of Oak Ridge, LLC, a financial-services company. In 2003 as his interest in Oak Ridge gained value, Samuel worked with Thomas Agresti, his attorney, to reduce his tax liability. Agresti proposed that Samuel transfer his Oak Ridge interest to a trust benefitting his wife, Elizabeth, and the couple's children. With Agresti as trustee, the trust would in turn convey the Oak Ridge interest to an offshore insurance company as an initial premium for a life-insurance policy benefitting the trust. Samuel agreed to Agresti's scheme without conducting any research or seeking independent legal advice.

The record includes three versions of the Samuel Wegbreit Trust Fund agreement, with suspicious differences between them. Most notably, two of the agreements identify only $18,750 in cash as initial trust assets, but the third also lists an insurance policy issued by Acadia Life Ltd.—a policy that was not issued by Acadia until 2004, the year after the

trust was formed. Another oddity is worth mentioning. One of the documents declares that it is restating the trust agreement dated January 25, 2002, over a year before Samuel even met with Agresti. No one could produce the purported 2002 agreement, nor could the Wegbreits explain why there were multiple trust agreements, the discrepancies between them, or which was operative.

Agresti, acting as trustee, acquired a variable life-insurance policy from Threshold Alliance, Ltd.[1] Although nominally based in the Cook Islands, Threshold shares a United States office with Agresti's law firm. The policy lists its issuance date as January 25, 2002—the same day the mysterious 2002 trust agreement was supposedly executed—and states that coverage does not start until the first premium is paid. As the initial premium payment, Samuel transferred his Oak Ridge interest to the trust, which it in turn conveyed to Threshold. Threshold's supposed policy administrator, however, denies signing the transfer documents and ever working for the company.

In 2004 Agresti swapped the Threshold policy for the one issued by Bermuda-based Acadia Life Ltd. At the time of the exchange, over 80% of the Threshold policy's value consisted of Samuel's Oak Ridge interest. The remainder was comprised of interests in shell companies organized and run by Agresti and his associates.

---

[1] Variable life-insurance policies split premiums between a cash account and an investment account, and thus provide an investment vehicle. *See generally Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145, 1147 (7th Cir. 2013).

The Wegbreits leveraged the insurance policies for their personal benefit in two ways. First, the shell companies made expensive purchases, including show horses and several Florida condominiums, on the Wegbreits' behalf. Second, the Wegbreits regularly requested policy loans from Acadia on behalf of the family trust, which would in turn deposit the money into a bank account in Samuel's name. Between 2004 and 2008, the Wegbreits received over $3 million in policy loans, none of which they reported as taxable income.

The biggest payoff came when Acadia, at Samuel's direction, sold his Oak Ridge interest to an investment firm for $11.3 million. Although the purchase agreement was finalized in 2004, the Wegbreits stipulated in the tax court that the sale occurred in January 2005, and the record shows that the money changed hands later that month. Because the proceeds were wired directly to Agresti, who passed them on to Acadia, the Wegbreits did not report any taxable income from the sale.

After a 2008 audit, the IRS determined that the trust income and Acadia policy gains, including those from the Oak Ridge sale, were taxable to the Wegbreits. In total they underreported their income from 2005 to 2009 by nearly $15 million. The Wegbreits disputed the IRS's conclusion in the tax court. After discovery revealed the suspicious documents related to the trust and life-insurance policies, the Commissioner of Internal Revenue amended his answer to assert civil fraud penalties.

After trial the tax court found that Samuel never effectively transferred his Oak Ridge interest to the trust. The rest of the tax scheme collapsed from there. Without the

Oak Ridge interest, the trust never paid the initial premium for the Threshold policy—a condition to its issuance—and Agresti could not exchange the invalid Threshold policy for the Acadia policy. The judge additionally found that the trust was a sham lacking economic substance and thus should be disregarded for tax purposes. With the trust and insurance policies out of the way, the judge agreed with the Commissioner's assessment of the Wegbreits' tax liability. She also imposed fraud penalties, noting that the record displayed several indications of fraud, including false and misleading documents and failure to cooperate with tax authorities.

## II. Discussion

We review the tax court's legal conclusions de novo and its factual findings for clear error. *Cole v. Comm'r*, 637 F.3d 767, 773 (7th Cir. 2011). We also presume that the Commissioner's assessment of a tax deficiency is correct. *Id.* To shift the burden to the Commissioner, the taxpayer must show that the assessment "lacks a rational foundation or is arbitrary and excessive." *Id.* (quotation marks omitted).

Although "[t]he purpose of an appeal is to evaluate the reasoning and result reached by the" court below, *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 690 (7th Cir. 2018), the Wegbreits raise a bevy of legal topics wholly irrelevant to the tax court's decision, from statutory-diversification rules for life-insurance portfolios to the grantor-trust doctrine. When they do address germane issues, their brief flagrantly violates Rule 28's requirement to support each argument "with citations to the authorities and parts of the record on which [they rely]." FED. R. APP. P. 28(a)(8)(A). As just a sample, the brief cites a 489-page

insurance treatise—all of it—in support of a single proposition and the "entire record" in support of another. Notwithstanding this general incoherence, we can discern two contested issues on which the Wegbreits' brief satisfies the bare minimum of Rule 28: the date of the sale of Samuel's Oak Ridge shares, and the Commissioner's compliance with 26 U.S.C. § 6751 in seeking fraud penalties. The balance of the Wegbreits' conclusory arguments are waived. *See, e.g.*, *Cole*, 637 F.3d at 773.

**A. Oak Ridge Sale Date**

The Internal Revenue Code states that "[t]he amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer," unless the taxpayer's accounting method permits otherwise. 26 U.S.C. § 451(a). The Wegbreits maintain that the Commissioner is barred by the statute of limitations from assessing any back taxes based on 2004 income, *see id.* § 6501(a), and that because the Oak Ridge sale was consummated in 2004, the proceeds are taxable income for 2004.

The flaws in this argument are numerous. Most obviously, the Wegbreits stipulated below that the sale occurred on January 1, 2005. They ask us to release them from this stipulation, but they never made such a request to the tax court. That's a waiver. *See Soo Line R.R. Co. v. Consolidated Rail Corp.*, 965 F.3d 596, 601 (7th Cir. 2020). Moreover, their request to undo the stipulation consists of an utterly undeveloped assertion that the date of a sale is a legal conclusion that cannot be conceded. That's a double waiver. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (undeveloped, cursory arguments are waived). And the assertion is wrong: The date of a sale is a

question of fact (or at least a mixed question of fact and law), *Williams v. Comm'r*, 1 F.3d 502, 505 (7th Cir. 1993), and thus fair game for stipulation, TAX CT. R. 91(a) (permitting stipulation of a fact or an application of law to a fact).

In any event, the Wegbreits' argument is factually baseless because the evidence unambiguously shows, and the Wegbreits concede, that the funds were received in January 2005. In a single conclusory sentence, the Wegbreits assert that Acadia is an "accrual base" taxpayer permitted to report the sale proceeds as 2004 income, *see* 26 U.S.C. § 451(b)(1)(A), but this unsupported, cursory argument is waived too, *Shipley*, 947 F.3d at 1063. In yet another woeful failure to grapple with the tax court's decision, the Wegbreits also do not explain why Acadia's accounting method matters since the judge found that the Acadia policy was never valid and the trust purportedly holding the policy was a sham.

**B. Compliance with § 6751**

With a few exceptions, the IRS may not assess any penalty "unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." § 6751(b)(1). The Wegbreits insist that we must vacate the tax court's fraud penalty because the Commissioner did not comply with § 6751.

As with the Oak Ridge sale date, the Wegbreits' stipulations in the tax court foreclose this argument. They agreed both to the factual basis for the Commissioner's compliance with § 6751 and to the ultimate conclusion: The Commissioner "complied with the written approval

requirement under … § 6751(b)(1).” Their attempts to skirt this unequivocal stipulation are perfunctory and raised for the first time on appeal. Either constitutes a waiver. *Soo Line*, 965 F.3d at 601.

**C. Sanctions**

Rule 38 permits us to impose sanctions for frivolous appeals. FED. R. APP. P. 38. The presumptive sanction for a frivolous tax appeal is $5,000. *Veal-Hill v. Comm'r*, 976 F.3d 775 (7th Cir. 2020) (per curiam). “An appeal is frivolous if the appellant's claims are cursory, totally undeveloped, or reassert a previously rejected version of the facts. An appeal is also frivolous if it presents arguments that are so insubstantial that they are guaranteed to lose.” *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 791 (7th Cir. 2019) (citations omitted). This appeal fits both standards.

The Wegbreits' brief, signed by attorney John E. Rogers, is woefully deficient. The bulk of its 78 pages consists of rambling, unsupported assertions, most of which do not bear any relationship to the reasoning in the tax court's decision. As we've explained, the only two discernable, arguably relevant arguments are sure losers, stipulated away without excuse and frivolous to boot. On top of these glaring shortcomings, the Wegbriets accuse the IRS's attorneys of threatening and intimidating them to settle the case, yet they offer no evidence for such a serious allegation. This baseless accusation is irresponsible and entirely inappropriate for a lawyer admitted to practice before this court.

We have cautioned Rogers before about the consequences of bringing frivolous appeals, *Sugarloaf Fund, LLC v. Comm'r*, 953 F.3d 439, 441 (7th Cir. 2020), but that

warning apparently went unheeded. We therefore order Rogers to show cause within 14 days why he should not be sanctioned for bringing this utterly frivolous appeal in violation of Rule 38 of the Federal Rules of Appellate Procedure. We also direct the Clerk of Court to forward this opinion to the Illinois Attorney Registration and Disciplinary Commission for any action it deems appropriate.

AFFIRMED; ORDER TO SHOW CAUSE ISSUED